JMK:WK/DE/MEB
F. #2018R00521

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against –

DAVID DIAZ,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

I N F O R M A T I O N

Cr. No. 18-00140 (ENV)
(T. 18, U.S.C., §§ 371, 981(a)(1)(C) and 3551 et seq.; T. 21, U.S.C., § 853(p))

THE UNITED STATES CHARGES:

At all times relevant to this Information, unless otherwise stated:

<u>THE DEFENDANT AND REFERENCED INDIVIDUALS AND ENTITIES</u>

1. Petroleos de Venezuela S.A. ("PDVSA") was the Venezuelan state-owned and state-controlled oil company. PDVSA and its subsidiaries and affiliates were responsible for exploration, production, refining, transportation and trade in energy resources in Venezuela. Among other products, PDVSA supplied asphalt to companies around the world and also provided funding for various operations of the Venezuelan government. PDVSA and its wholly owned subsidiaries were "instrumentalities" of the Venezuelan government, as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(2)(A). PDVSA officers and employees were "foreign officials," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2).

2. Asphalt Company, a United States company the identity of which is known to the United States, was one of the largest asphalt providers in the world, and was based

in the United States. At all relevant times, Asphalt Company was a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2.

3. Asphalt Trading, a company the identity of which is known to the United States, was one of a group of companies related to Asphalt Company. Asphalt Trading was incorporated under the laws of the Bahamas, but its principal place of business was in the same location as Asphalt Company's principal place of business in the United States. Therefore, at all relevant times, Asphalt Trading was a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2.

4. Asphalt Company Subsidiary, a company the identity of which is known to the United States, was a subsidiary of Asphalt Company that handled Asphalt Company's trading activity from an office in Switzerland.

5. Joint Venture Co., a company the identity of which is known to the United States, was a joint venture between Asphalt Company and a European asphalt company, the identity of which is known to the United States.

6. Swiss Asphalt Company, a Swiss company the identity of which is known to the United States, was in the asphalt business and was, at times, a competitor to Asphalt Company. In or about and between 2012 and 2015, Asphalt Company entered into contracts with Swiss Asphalt Company to purchase or sell asphalt.

7. Asphalt Company Two, the identity of which is known to the United States, was headquartered in Puerto Rico. Asphalt Company Two operated primarily in Latin America and the Caribbean. At all relevant times, Asphalt Company Two was a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2.

8. The defendant DAVID DIAZ was a citizen of Venezuela and a naturalized U.S. citizen as of approximately 2014 who worked as an agent for Asphalt Company Two in or about and between 2002 and 2018. Between approximately 2011 and 2018, DIAZ worked at various times as an agent for Asphalt Company, Asphalt Trading, Asphalt Company Subsidiary and Joint Venture Co. At all relevant times, DIAZ was a "domestic concern" and an agent of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2.

9. Asphalt Company Employee, an individual whose identity is known to the United States, was a citizen of Venezuela and legal permanent resident of the United States since at least 2017. Asphalt Company Employee was a trader at Asphalt Company in or about and between 2012 and 2018. At all relevant times, Asphalt Company Employee was an employee of a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2.

10. Asphalt Trading Employee, an individual whose identity is known to the United States, was a United States citizen and a trader at Asphalt Company and related companies in or about and between 2006 and 2017. At all relevant times, Asphalt Trading Employee was a "domestic concern" and employee of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2.

11. PDVSA Official #1, an individual whose identity is known to the United States, was a dual citizen of Spain and Venezuela and an executive involved in the sale of PDVSA asphalt in or about and between 2011 and March 2015. During that time, PDVSA Official #1 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2).

12. PDVSA Official #2, an individual whose identity is known to the United States, was a citizen of Venezuela and the supervisor of PDVSA Official #1 in or about and between 2011 and 2015. During that time, PDVSA Official #2 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2).

13. PDVSA Official #3, an individual whose identity is known to the United States, was a citizen of Venezuela and an analyst involved in the sale of PDVSA asphalt in or about and between 2011 and 2016. During that time, PDVSA Official #3 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2).

14. PDVSA Official #4, an individual whose identity is known to the United States, was a citizen of Venezuela and an employee involved in the sale of PDVSA asphalt in or about and between 2011 and 2018. During that time PDVSA Official #4 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2).

## THE FOREIGN CORRUPT PRACTICES ACT

15. The FCPA was enacted by Congress for the purpose of, among other things, making it unlawful to corruptly offer, promise, authorize, or pay money or anything of value, directly or indirectly, to a foreign official for the purpose of obtaining or retaining business for, or directing business to, any person.

## THE BRIBERY SCHEMES

I. The Asphalt Company Two Bribery Scheme

16. In or about 2011, the defendant DAVID DIAZ, who was an agent of Asphalt Company Two, agreed with the principal of that company to pay bribes to PDVSA

4

Official #1 and PDVSA Official #2 in order to assist Asphalt Company Two in winning term contracts to purchase asphalt from PDVSA.

17. Pursuant to this agreement, between approximately 2011 and 2015, Asphalt Company Two paid the defendant DAVID DIAZ a commission of approximately 45 cents for every barrel of asphalt that Asphalt Company Two purchased from PDVSA. DIAZ in turn paid a bribe of approximately 20 cents to PDVSA Official #1 for each of these barrels. PDVSA Official #1 then shared a portion of the bribe payments with PDVSA Official #2.

II. The Asphalt Company Bribery Scheme

18. As set forth above, in or about and between 2011 and 2018, the defendant DAVID DIAZ served as an agent at various times for Asphalt Company, Asphalt Trading, Asphalt Company Subsidiary and Joint Venture Co.

19. In connection with this arrangement, DIAZ worked with Asphalt Company Employee, Asphalt Trading Employee, executives of Asphalt Company and others to pay bribes to various PDVSA officials in order to, among other things: (a) purchase asphalt from PDVSA; (b) acquire inside, non-public information from PDVSA to obtain an improper advantage in the purchase and sale of asphalt; and (c) recover certain late fees, called demurrage fees, owed by PDVSA to Swiss Asphalt Company related to the loading of asphalt.

A. 2012–2015: Bribes to Win Contracts

20. Following a dispute between PDVSA and Asphalt Company in or around 2012, PDVSA refused to sell asphalt to Asphalt Company or companies related to Asphalt Company. In order to circumvent this prohibition, Asphalt Company and Swiss Asphalt Company agreed that Swiss Asphalt Company would purchase asphalt from PDVSA at the request and direction of Asphalt Company and then resell that asphalt to Asphalt Company at a

small premium. At this same time, in or about 2012, and continuing to in or about 2015, the defendant DAVID DIAZ agreed with Asphalt Company Employee, Asphalt Trading Employee, PDVSA Official #1 and PDVSA Official #2 that DIAZ would pay bribes to PDVSA Official #1 and PDVSA Official #2 on behalf of Asphalt Company, Asphalt Trading and Asphalt Company Subsidiary. These bribes were paid so that PDVSA Official #1 and PDVSA Official #2 would assist Swiss Asphalt Company in obtaining and retaining term contracts with PDVSA to purchase asphalt in order for Asphalt Company, Asphalt Trading and Asphalt Company Subsidiary to then purchase the asphalt from Swiss Asphalt Company.

21. Pursuant to this agreement, from approximately 2012 to 2015, Asphalt Company and Asphalt Company Subsidiary paid the defendant DAVID DIAZ a commission of approximately 45 cents for every barrel of asphalt Swiss Asphalt Company purchased from PDVSA and provided to Asphalt Company. DIAZ in turn paid a bribe of approximately 20 cents to PDVSA Official #1 for each barrel of asphalt PDVSA sold to Swiss Asphalt Company. PDVSA Official #1 then shared a portion of the bribe payments with PDVSA Official #2. High-level executives at Asphalt Company, Asphalt Trading and Asphalt Company Subsidiary authorized the above bribe payments to PDVSA officials.

22. In furtherance of the scheme, from approximately 2013 to 2015, Asphalt Company, Asphalt Company Subsidiary and Joint Venture Co. wired the defendant DAVID DIAZ approximately $1.2 million from which DIAZ in turn made bribe payments to PDVSA Official #1 and PDVSA Official #2 and kickback payments to Asphalt Company Employee.

B. <u>2015–2018: Bribes for Inside Information</u>

23. In approximately March 2015, PDVSA Official #1 stopped working at PDVSA and began doing business with PDVSA as a counter-party.

24.     In or about and between March 2015 and 2018, the defendant DAVID DIAZ agreed with Asphalt Company Employee, Asphalt Trading Employee and PDVSA Official #1 that DIAZ would pay PDVSA Official #1 $500 per month to bribe various PDVSA employees, including PDVSA Official #3 and PDVSA Official #4, in exchange for supplying PDVSA Official #1 with inside, non-public information. As a part of this agreement, PDVSA Official #1 in turn provided this information to Asphalt Company and Asphalt Company Subsidiary to give them a competitive advantage in the international purchase and sale of asphalt. At one point, Asphalt Company Employee and Asphalt Trading Employee agreed to pay bribes directly to PDVSA Official #3.

25.     With the approval of high-level Asphalt Company executives, and in order to fund and disguise the $500 monthly bribe payments paid by the defendant DAVID DIAZ through PDVSA Official #1, DIAZ entered into a sham consulting agreement with Joint Venture Co. pursuant to which DIAZ received a $2,000 monthly retainer.

C.     2015–2018: Bribes to Recover Demurrage Fees

26.     Pursuant to the terms of its contracts to supply asphalt to Swiss Asphalt Company, delays by PDVSA in delivering and loading asphalt onto Swiss Asphalt Company's ships would result in financial penalties, called demurrage fees, owed by PDVSA to Swiss Asphalt Company. Between in or about 2015 and 2018, due to such delays, PDVSA incurred more than three million dollars in demurrage fees. Because Swiss Asphalt Company served as a pass-through company for Asphalt Company, a substantial portion of any demurrage fees paid by PDVSA to Swiss Asphalt Company would be directed to Asphalt Company.

27.     Accordingly, from approximately March 2015 to 2018, high-level executives at Asphalt Company provided approvals for the defendant DAVID DIAZ to pay

PDVSA Official #1 10 percent of any demurrage fees paid by PDVSA to Swiss Asphalt Company. The purpose of this payment was to allow PDVSA Official #1 to pay bribes to various PDVSA employees in return for authorizing the payment of demurrage fees to Swiss Asphalt Company. Swiss Asphalt Company would then remit most of the demurrage fees to Asphalt Company.

28. As a result of the scheme, Asphalt Company recovered approximately $280,000 in demurrage fees.

## COUNT ONE
(Conspiracy to Violate the FCPA – Asphalt Company Two Bribery Scheme)

29. The allegations contained in paragraphs one through 28 are realleged and incorporated as if fully set forth in this paragraph.

30. In or about and between 2011 and 2017, both dates being approximate and inclusive, within the District of Puerto Rico, the defendant DAVID DIAZ, together with others, did knowingly and willfully conspire to commit one or more offenses against the United States, to wit, being a domestic concern and an agent of a domestic concern, to make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, to a foreign political party and official thereof, and to a person while knowing that all or a portion of such money and thing of value would be offered, given, and promised to a foreign official and to a foreign political party and official thereof, for purposes of: (i) influencing acts and decisions of such foreign official, foreign political party and official thereof in his, her or its official capacity; (ii) inducing such foreign official, foreign political party and official thereof to do and omit to do acts in violation of the lawful duty of such official and party; (iii) securing any improper

advantage; and (iv) inducing such foreign official, foreign political party and official thereof to use his, her or its influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist Asphalt Company Two and others in obtaining and retaining business for and with, and directing business to, Asphalt Company Two and others, contrary to Title 15, United States Code, Section 78dd-2.

31. In furtherance of the conspiracy and to effect its objects, the defendant DAVID DIAZ, together with others, committed and caused to be committed, among others, the following:

OVERT ACTS

(a) On or about July 9, 2013, DIAZ caused a $25,885 wire payment to be made from a bank account controlled by DIAZ in Miami, Florida to a bank account controlled by PDVSA Official #1 in Panama, a portion of which represented a bribe for, and on behalf of, Asphalt Company Two.

(b) On or about January 21, 2014, DIAZ caused a $47,788.20 wire payment to be made from a bank account controlled by DIAZ in Miami, Florida to a bank account controlled by PDVSA Official #1 in Panama, a portion of which represented a bribe for, and on behalf of, Asphalt Company Two.

(c) On or about June 17, 2014, Asphalt Company Two caused a $14,290.65 wire payment to be made from a bank account controlled by Asphalt Company Two to a bank account controlled by DIAZ in Miami, Florida.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
(Conspiracy to Violate the FCPA – Asphalt Company Bribery Scheme)

32. The allegations contained in paragraphs one through 28 are realleged and incorporated as if fully set forth in this paragraph.

33. In or about and between 2012 and December 2017, both dates being approximate and inclusive, within the Southern District of Florida, the defendant DAVID DIAZ, together with others, did knowingly and willfully conspire to commit one or more offenses against the United States, to wit:

(a) being a domestic concern and an agent of a domestic concern, to make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, to a foreign political party and official thereof, and to a person while knowing that all or a portion of such money and thing of value would be offered, given, and promised to a foreign official and to a foreign political party and official thereof, for purposes of: (i) influencing acts and decisions of such foreign official, foreign political party and official thereof in his, her or its official capacity; (ii) inducing such foreign official, foreign political party and official thereof to do and omit to do acts in violation of the lawful duty of such official and party; (iii) securing any improper advantage; and (iv) inducing such foreign official, foreign political party and official thereof to use his, her or its influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist Asphalt Company and related entities in obtaining and retaining business for and with, and directing business to, Asphalt Company and others, contrary to Title 15, United States Code, Section 78dd-2; and

(b) while in the territory of the United States, corruptly to make use of the mails or any means or instrumentality of interstate commerce or to do any act in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, to a foreign political party and official thereof, and to a person while knowing that all or a portion of such money and thing of value would be offered, given, and promised to a foreign official and to a foreign political party and official thereof, for purposes of: (i) influencing acts and decisions of such foreign official, foreign political party and official thereof in his, her or its official capacity; (ii) inducing such foreign official, foreign political party and official thereof to do and omit to do acts in violation of the lawful duty of such official and party; (iii) securing any improper advantage; and (iv) inducing such foreign official, foreign political party and official thereof to use his, her or its influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist Asphalt Company and related entities in obtaining and retaining business for and with, and directing business to, Asphalt Company and others, contrary to Title 15, United States Code, Section 78dd-3.

34. In furtherance of the conspiracy and to effect its objects, the defendant DAVID DIAZ, together with others, committed and caused to be committed, among others, the following:

OVERT ACTS

(a) On or about July 9, 2013, DIAZ caused a $25,885 wire payment to be made from a bank account controlled by DIAZ in Miami, Florida to a bank account controlled

by PDVSA Official #1 in Panama, a portion of which represented a bribe for, and on behalf of, Asphalt Company.

    (b) On or about January 6, 2014, DIAZ invoiced Asphalt Company 45 cents a barrel for consulting services totaling $19,497.60.

    (c) On or about January 17, 2014, Asphalt Company caused a $19,497.60 wire payment to be made from a bank account it controlled in Miami, Florida to a bank account controlled by DIAZ in Miami, Florida.

    (d) On or about May 4, 2017, DIAZ sent a WhatsApp message to Asphalt Company Employee and Asphalt Trading Employee stating, in relevant part:

> Asphalt tender. Bids in $BBls: Rosneft -8.98 usec, Gunvor -4 usec, Gunvor +2 Florida, Gunvor -2 Central America and the Carribean, Helsinge +0.55 Central America dn the Carribean. Reference -2.41 Florida cargo of 80MBbls and -3.90 Florida cargo of 30MBbls. Negotiate with Gunvor in order to obtain the reference, review the windows for PDVSA's interests, close with approval from the Vice President and report.

    (e) On or about April 11, 2017, DIAZ sent a WhatsApp message to Asphalt Company Employee and Asphalt Trading Employee stating, as translated from Spanish, in relevant part: "I'm committing myself to oil trader [i.e. PDVSA Official #1] with 20% demurrage and payments in 15 days. 5% has to be added to that which would be my services. So that [high-level executives at Asphalt Company] are clear."

(Title 18, United States Code, Sections 371 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION

    35. The United States gives notice to defendant that, upon his conviction of any of the offenses charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c),

12

which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

36. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p))

*[signature]*
RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York

*[signature]* Sandra Moser/DSK
SANDRA L. MOSER
Acting Chief, Fraud Section
Criminal Division, Dept. of Justice

13

F. #2018R00521
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT
EASTERN *District of* NEW YORK
CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

*DAVID DIAZ,*

Defendant.

# INFORMATION

(T. 18, U.S.C., §§ 371, 981(a)(1)(C) and 3551 *et* <u>seq.</u>; T. 21, U.S.C., § 853(p))

*A true bill.*

_____
*Foreperson*

Filed in open court this _____ day,

of _____ A.D. 20 _____

_____
*Clerk*

Bail, $ _____

_____

*Whitman G.S. Knapp and Mark E. Bini, Assistant U.S. Attorneys (718) 254-7000*
*Derek J. Ettinger, U.S. Department of Justice Trial Attorney, (202) 514-2000*